## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| IN RE: | ) | |
| COMMERCIAL FINANCIAL SERVICES, INC. and | ) ) ) | Case No. 98-05162-R Chapter 11 |
| CF/SPC NGU, INC., | ) ) ) | Case No. 98-05166-R Chapter 11 Jointly Administered with Case No. 98-05162-R |
| Debtors and Debtors-in-Possession. | ) | |
| COMMERCIAL FINANCIAL SERVICES, INC., Debtor and BRADLEY D. SHARP, Trustee of the CFS Liquidating Trust, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | Adv. No. 02-0110-M |
| vs. | ) ) | |
| MIKE C. TEMPLE, an individual, | ) ) | |
| Defendant. | ) | |

### FIRST AMENDED ADVERSARY COMPLAINT

Commercial Financial Services, Inc., debtor pursuant to a confirmed Chapter 11 Plan ("CFS"), and Bradley D. Sharp, Trustee of the CFS Liquidating Trust, for their First Amended Adversary Complaint against Defendant, Mike C. Temple ("Temple"), allege and state:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b), because it arises in and is related to the Chapter 11 case, In re Commercial Financial Services, Inc., Case No. 98-05162-R, pending in the United States Bankruptcy Court for the Northern District of Oklahoma.

2.      This adversary proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(H) and (O).

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

## PARTIES

4.     CFS is an Oklahoma corporation and the CFS Liquidating Trust is a trust formed under the laws of the State of Oklahoma, each with its principal place of business located at 2408 East 81st Street, Suite 407, Tulsa, Oklahoma 74137.

5.     Temple is an individual who is a former employee of CFS.

## BACKGROUND

6.     On December 11, 1998 (the "Petition Date"), CFS filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

7.     Sharp, Trustee of the CFS Liquidating Trust, is currently liquidating CFS' remaining assets pursuant to the "Second Amended Plan of Orderly Liquidation" (the "Plan") confirmed by order entered by the Court on September 14, 2001. Pursuant to Section 5.4(a) of the Plan and Section 1141(b) of the Bankruptcy Code, CFS and Sharp are authorized to bring the claims asserted herein. The claims asserted herein are brought pursuant to Sections 544 and 548 of the Bankruptcy Code and the Oklahoma Uniform Fraudulent Transfers Act.

## FACTUAL ALLEGATIONS

8.     Between approximately March 1996 and July 1998, Temple was employed by CFS. Temple served as the Chief Financial Officer of CFS. Temple reported to William R. Bartmann and Mitchell Vernick when each was President of CFS. On or about July 17, 1998, Temple terminated his employment with CFS.

9.     Temple originally entered into an Employment Agreement with CFS dated March 1, 1996 (the "March Agreement"). A copy of the March Agreement is attached hereto as Exhibit A.

10.    Temple entered into another Employment Agreement with CFS dated September 5, 1996 (the "September Agreement") that superceded the March Agreement.  A copy of the September Agreement is attached hereto as Exhibit B.

11.    The March Agreement provided Temple with an annual salary of $150,000 for a term of two years until March 1, 1998.

12.    The September Agreement provided Temple with an annual salary of $150,000 for a term of two years until September 4, 1998.  In September, 1996, Temple's compensation was increased to $165,000 per year.  In October, 1997, Temple's compensation was increased to $500,000 per year.

13.    Temple and CFS voluntarily terminated the September Agreement pursuant to the terms of a Termination of Employment Agreement dated July 10, 1998 (the "Termination Agreement").  A copy of the Termination Agreement is attached hereto as Exhibit C.  Temple terminated his employment with CFS effective July 17, 1998.

14.    Pursuant to the Termination Agreement, Temple received the following from CFS (collectively, the "Transfers"):

(a)    $3,250,000;

(b)    Indemnification for acts taken while an employee of CFS; and,

(c)    COBRA payments for a period of 12 months.

15.    The amounts paid to or on behalf of Temple pursuant to the Termination Agreement differed from, and greatly exceeded, the payments to be paid to Temple pursuant to the September Agreement.  Pursuant to the September Agreement, Temple was entitled to a separation payment equal to twice his annual salary (a total of $1,000,000) if his employment was terminated by CFS for any reason other than "cause" as defined in the September

Agreement. Temple was not entitled to any separation payment pursuant to the Termination Agreement if he voluntarily resigned his position with CFS.

16.     Upon information and belief, Temple voluntarily resigned his position with CFS and was not entitled to any separation payment pursuant to the September Agreement. Nevertheless, if Temple was entitled to a separation payment pursuant to the September Agreement, the payment made to Temple pursuant to the Separation Agreement exceeded the termination payment described in the September Agreement by a multiple in excess of 3.

17.     Temple negotiated the payment of $3,250,000 pursuant to the Termination Agreement with William R. Bartmann, the former President of CFS.

18.     On information and belief, CFS had no legal or other obligation to make the Transfers to Temple.

## CLAIMS FOR RELIEF

### COUNT I
(Avoidance and Recovery of Fraudulent Transfers)

19.     CFS and Sharp reallege and restate the other numbered paragraphs of this First Amended Adversary Complaint as though fully set forth herein.

20.     The Transfers constituted a transfer of an interest of CFS in property.

21.     On information and belief, CFS received less than a reasonably equivalent value in exchange for the Transfers.

22.     On information and belief, on the date of the Transfers, CFS (a) was insolvent, or became insolvent as a result of the Transfers; (b) was engaged or was about to engage in a business or a transaction for which the remaining assets of CFS were unreasonably small in relation to the business or transaction; and/or (c) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

23.    CFS made the Transfers within one (1) year of the Petition Date.

24.    Pursuant to the provisions of a Tolling Agreement entered into by and between CFS and Temple, this action is brought within the applicable statute of limitations.

25.    CFS and Sharp are entitled to avoid the Transfers pursuant to 11 U.S.C. § 548(a)(1).

26.    CFS and Sharp are entitled to recover from Temple the value of the Transfers pursuant to 11 U.S.C. § 550(a)(1).

## COUNT II
(Avoidance and Recovery of Fraudulent Transfer—Section 116)

27.    CFS and Sharp reallege and restate the other numbered paragraphs of this First Amended Adversary Complaint as though fully set forth herein.

28.    The Transfers constituted a transfer of an interest of CFS in property.

29.    On information and belief, CFS received less than a reasonably equivalent value in exchange for the Transfers.

30.    On information and belief, on the date of the Transfers, CFS (a) was engaged or was about to engage in a business or a transaction for which the remaining assets of CFS were unreasonably small in relation to the business or transaction; and/or (b) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

31.    CFS made the Transfers within four (4) years of the date of the commencement of this action.  11 U.S.C. § 108(a); 24 O.S. 1991, § 121(2); Fed. R. Civ. P. 15(c)(2).

32.    CFS and Sharp are entitled to avoid the Transfers pursuant to 11 U.S.C. § 544(b) and 24 O.S. 1991, § 116.

33.    CFS and Sharp are  entitled to recover from Temple the value of the Transfers pursuant to 11 U.S.C. § 550(a)(1) and 24 O.S. 1991, §§ 116, 119 and/or 120.

## COUNT III
(Avoidance and Recovery of Fraudulent Transfer—Section 117)

34.    CFS and Sharp reallege and restate each of the other numbered paragraphs of this First Amended Adversary Complaint as though fully set forth herein.

35.    The Transfers constituted a transfer of an interest of CFS in property.

36.    On information and belief, CFS received less than a reasonably equivalent value in exchange for the Transfers.

37.    On information and belief, CFS was insolvent at the time of, or became insolvent as a result of, the Transfers.

38.    On information and belief, there are creditors of CFS whose claims (a) arose before the date of the Transfers, (b) remain unpaid, and (c) exceed, in the aggregate, the amount of the Transfers.

39.    CFS made the Transfers within four (4) years of the date of the commencement of this action.  11 U.S.C. § 108(a); 24 O.S. 1991, § 121(2); Fed. R. Civ. P. 15(c)(2).

40.    CFS and Sharp are entitled to avoid the Transfers pursuant to 11 U.S.C. § 544(b) and 24 O.S. 1991, § 117(A).

41.    CFS and Sharp are entitled to recover from Temple the value of the Transfers pursuant to 11 U.S.C. § 550(a)(1) and 24 O.S. 1991, §§ 117(A), 119 and/or 120.

## PRAYER FOR RELIEF

WHEREFORE, CFS respectfully requests that the Court:

A.    Enter judgment in favor of CFS and Sharp and against Temple in an amount equal to the value of the Transfers, which is no less than $3,250,000, plus pre-judgment interest; and,

B.    Grant CFS such further relief as may be equitable and just.

Respectfully submitted,

Larry M. Wolfson, Esq.
SHAW GUSSIS DOMANSKIS FISHMAN
GLANTZ & WOLFSON LLC
1144 W. Fulton Market St., Suite 200
Chicago, IL  60607
PH:  (312) 541-0151
FAX:  (312) 541-0155

AND

Robert R. Stauffer
Jerry L. Switzer, Jr.
JENNER & BLOCK, LLC
One IBM Plaza
Chicago, IL  60611
PH:  (312) 222-9350
FAX:  (312) 840-7374

AND

Neal Tomlins, OBA No. 10499
Ronald E. Goins, OBA No. 3430
TOMLINS & GOINS, P.C.
Utica Plaza Building
2100 S. Utica Ave., Suite 300
Tulsa, OK  74114
PH:  (918) 747-6500
FAX: (918) 749-0874

Attorneys for Commercial Financial Services,
Inc. and the CFS Liquidating Trustee

<u>CERTIFICATE OF MAILING</u>

I hereby certify that on the _2 4ᵗʰ_ day of July, 2002 I caused a true and correct copy of the above and foregoing document to be placed in the United States Mails, with proper postage prepaid thereon, addressed to the following:

John B. Heatly
Fellers, Snider, Blankenship, Bailey & Tippens, P.C.
Bank One Tower
100 North Broadway, Suite 1700
Oklahoma City, Oklahoma 73102-8820


Ronald E. Goins

# EXHIBIT A

## EMPLOYMENT AGREEMENT

This Agreement is made effective as of March 1, 1996, by and between Commercial Financial Services, Inc., a corporation duly organized and existing under the laws of the State of Oklahoma, with a place of business at 2448 East 81st Street, Suite 5500, Tulsa, Oklahoma 74137-4248, hereinafter referred to as Employer, and Mike C. Temple, of 81 Woodside Drive, San Anselmo, California 94960 hereinafter referred to as Employee.

### RECITALS

The parties recite and declare:

A. Employer desires to hire Employee because of Employee's business experience and expertise in banking and financial matters.

B. Employee desires to be employed by Employer in the capacity of Chief Financial Officer.

For the reasons set forth above, and in consideration of the mutual covenants and promises of the parties set forth in this agreement, Employer and Employee agree as follows:

### SECTION ONE
### EMPLOYMENT

Employer employs Employee on the terms and conditions stated in this agreement to perform the services of Chief Financial Officer for Commercial Financial Services, Inc. and its affiliated entities and related services as requested by Employer, and Employee agrees to perform such services for Employer on the terms and conditions stated in this agreement.

### SECTION TWO
### DUTIES

The duties of the Employee shall be those duties which can reasonably be expected to be performed by a person with the title of Chief Financial Officer, as more specifically detailed in Schedule A attached hereto, and to which Employee and Employer may hereafter agree. Employee's duties may, from time to time, be changed or modified as agreed to by Employee and Employer.

### SECTION THREE
### TERM OF EMPLOYMENT

The term of this agreement shall be two years commencing March 1, 1996. Continued employment of Employee by Employer after March 1, 1998, shall be at will and on the conditions agreed to by the parties prior to the expiration of this agreement.

CFS 005522

## SECTION FOUR
## COMPENSATION

A. Employer shall pay employee an annual salary of One Hundred and Fifty Thousand Dollars ($150,000), subject to withholding and payable twice a month on the 15th and last day of each month.

B. In addition to the compensation stated in Paragraph A of this section, Employee shall be eligible for any senior management bonus program, senior management long-term incentive plan or other perquisites provided to senior management, all at the sole discretion of Employer.   No benefit or perquisite provided to Employee shall be deemed to be in lieu of base salary or other compensation.

C. Employee shall be eligible for annual salary increases in accordance with Employer's salary program which is at Employer's sole discretion.

## SECTION FIVE
## EMPLOYER'S OBLIGATION ON ITS
## TERMINATION OF EMPLOYEE'S EMPLOYMENT
## OR IN THE EVENT OF A CHANGE IN CONTROL

A. If on or before February 28, 1998, Employer terminates this agreement for any reason other than cause (as defined in Section 6 below), Employer shall provide to Employee, within thirty days of the termination event, a lump sum cash payment equal to the Employee's Base Salary for a pay period multiplied by the number of pay periods from the date of the termination event to February 28, 1998.

B. If on or before February 28, 1998, a Change in Control as hereinafter defined occurs and (i) Employee is thereafter terminated on or before February 28, 1998, or (ii) Employee voluntarily terminates his employment on or before February 28, 1998 because of, a change of his position or duties inconsistent with his position, duties, responsibilities and status with Employer immediately prior to such Change in Control, or the relocation of Employee's principal location of work to any location which is in excess of fifty miles from the location thereof immediately prior to a Change in Control, Employee shall be entitled to the cash payment described in Section 5A hereof.   A change in control shall mean for purposes of this provision that (i) Employer is merged or consolidated or reorganized into or with another corporation or other legal person and as a result of such merger, consolidation or reorganization less than 51% of the combined voting power of the then-outstanding securities of such corporation or person immediately after such transaction are held in the aggregate by the holders of voting securities of Employer immediately prior to such transaction; or (ii) Employer sells all or substantially all of its assets to another corporation or other

2

legal person, with the exceptions that (a) the sale of all or substantially all of Employer's assets in a securitization transaction shall not be deemed to be a change in control, and (b) the sale by Employer of assets to an entity that, immediately prior to such sale, held 51% of the combined voting power of the then-outstanding voting securities in common with Employer shall not be deemed to be a change in control.

### SECTION SIX
### EMPLOYER'S OBLIGATION ON TERMINATION OF EMPLOYMENT
### BY EMPLOYEE

If, during the term of this agreement, Employee should fail or refuse to perform the services contemplated by this agreement, or should be unable to perform such services due to death or permanent disability, or should engage in acts of behavior inappropriate to the position, including (i) an intentional act of fraud, embezzlement or theft in connection with his duties or in the course of his employment with Employer; (ii) intentional wrongful damage to property of Employer; (iii) intentional wrongful disclosure of trade secrets or confidential information of Employer; (iv) intentional violation of any law, rule or regulation (other than traffic violations or similar offenses) or final cease and desist order; (v) intentional breach of fiduciary duty involving personal profit; (vi) intentional action or inaction which causes material economic harm to Employer; or (vii) an act of moral turpitude or dishonesty (herein individually referred to as a "for cause" reason for termination), Employer's obligation to make the payment provided in Section Five of this agreement shall cease.

### SECTION SEVEN
### RELOCATION EXPENSES AND BONUS

A. In additon to the compensation Employee receives pursuant to Section Three of this agreement, Employee shall be entitled to reimbursement for out-of-pocket expenses associated with the relocation of his household from San Anselmo, California to Tulsa, Oklahoma by a mutually agreeable moving company in an amount agreed to by the parties after receiving two quotes from two different moving companies. Employee shall also be entitled under this provision to reimbursement of airfare costs for one trip from California to Tulsa for Employee and his wife. Such expenses shall be submitted pursuant to Employer's expense report policy and shall include appropriate documentation of the expenses.

B. Employee shall also be entitled to airfare costs for Employee and his wife for up to four house hunting trips to Tulsa from California.

C. Employee shall also be entitled to a relocation bonus of $35,000 (Thirty-Five Thousand Dollars) (net proceeds, adjusted for

3

CFS 005524

taxes) to cover real estate sales commissions, closing costs and other incidentals related to Employee's relocation.

D. In addition to the compensation Employee receives pursuant to Section Four and Section Seven (A), (B) and (C) of this agreement, Employee shall also be entitled to reimbursement for the costs of housing in Tulsa for a period not to exceed four months beginning March 1, 1996.

## SECTION EIGHT
## BENEFITS

In addition to the compensation Employee receives pursuant to Section Four and Section Seven of this agreement, Employee is eligible for participation in the employee benefit programs established by Employer upon fulfillment of the eligibility requirements for each plan. Employer may, without notice, modify or discontinue any employee benefit plans which it maintains without obligation to Employee hereunder.

## SECTION NINE
## BEST EFFORTS

Employee agrees that he will at all times faithfully, industriously, and to the best of his ability, experience and talents, perform all of the duties that may be required of and from Employee pursuant to the express and implicit terms of this agreement, to the reasonable satisfaction of Employer.

## SECTION TEN
## TRADE SECRETS

Employee agrees not to disclose to any person or entity any information regarding the business of Employer (other than in the performance of his duties as Chief Financial Officer), including, but not limited to, its customers, products, prices or manner of operations, without first obtaining Employer's written consent. In the event Employee breaches this section, Employer shall be entitled, among other remedies, to injunctive relief prohibiting Employee from disclosing such information. This section shall survive termination of this agreement.

## SECTION ELEVEN
## SOLICITATION AFTER TERMINATION

Employee agrees that, in addition to any other limitation, for a period of one year after the termination of his employment with Employer, except a termination caused by Employer in violation of the terms of this agreement, and unless otherwise specified in this

-4-

CFS 005525

agreement, Employee will not, on behalf of himself or on behalf of any other person, firm, corporation or other entity, call on any of the customers of Employer, or any of its affiliates or subsidiaries for the purpose of soliciting and/or providing to any of such customers any non-performing consumer loan servicing or purchasing any non-performing consumer loans from such customers, nor will he, in any way, directly or indirectly, for himself or on behalf of any other person, firm, corporation or other entity solicit, divert or take away any customer of Employer, its affiliates or its subsidiaries.

## SECTION TWELVE
### COMMUNICATIONS TO EMPLOYER

From the time this agreement commences until the termination of Employee's employment with Employer, Employee shall communicate and channel to Employer all knowledge, business and customer contacts and any other matters of information that could concern or be in any way beneficial to the business of Employer, whether acquired by employee before or during the term of this agreement; provided, however, that nothing under this agreement shall be construed as requiring such communications where the information is lawfully protected from disclosure as a trade secret of a third party.

## SECTION THIRTEEN
### NOTICE

Any notice required pursuant to this agreement shall be in writing and sent by registered or certified mail or personal delivery to Employer's principal office and Employee's last-known address.

## SECTION FOURTEEN
### GOVERNING LAW

This agreement shall be governed by the laws of the State of Oklahoma.

## SECTION FIFTEEN
### MODIFICATION

This agreement represents the entire agreement between the Employer and Employee. No modification of this agreement is valid unless it is in writing and signed by the parties.

## SECTION SIXTEEN
### ASSIGNABILITY

This agreement is not assignable.

-5-

CFS 005526

## SECTION SEVENTEEN
## NO WAIVER

The failure of either party to this agreement to insist upon the performance of any of the terms and conditions of this agreement, or the waiver of any breach of any of the terms and conditions of this agreement, shall not be construed as thereafter waiving any such terms and conditions, but the same shall continue and remain in full force and effect as if no such forebearance or waiver had occurred.

## SECTION EIGHTEEN
## SEVERABILITY

Each provision of this agreement is separable from the whole. If any portion of this agreement is determined to be invalid, that invalidity shall not impair the remaining provisions of this agreement.

IN WITNESS WHEREOF, the parties have executed this agreement the day and year first above written.

EMPLOYEE ACKNOWLEDGMENT:                    EMPLOYER ACKNOWLEDGMENT:

MIKE C. TEMPLE                              COMMERCIAL FINANCIAL
                                           SERVICES, INC.

NAME: _Mike C. Temple_                     NAME: _William R. Bartmann_

TITLE: _Chief Financial Officer_           TITLE: _President_

DATE: _3/1/96_                             DATE: _3/1/96_

-6-

CFS 005527

FEB-22-96 12:31 FROM:                                    ID:4159040150                PAGE

## COMMERCIAL FINANCIAL SERVICES, INC.

### JOB DESCRIPTION

**JOB TITLE:** Chief Financial Officer

**DEPARTMENT:** Executive

**REPORTS TO:** President

**BASIC FUNCTION:**

The Chief Financial Officer has broad responsibility for evaluating, managing, controlling and reporting the Company's operating results. The CFO is an integral member of the Company Executive Team which evaluates new business opportunities, establishes plans for implementation of new business lines, and negotiates adequate financing to support the operations of the Company. The CFO serves as a member of the Executive Committee, Audit Committee, Strategic Planning Committee, and Senior Management Committee.

**PRINCIPAL DUTIES AND RESPONSIBILITIES:**

1. Maximizes return on financial assets by evaluating and approving recommendations for establishment of financial policies, procedures, controls, and reporting systems.

2. Counsels senior management on fiscal control and profitability. Guides financial decisions by regularly interpreting and reporting financial data and trendlines to management. Provides advice on financial matters.

3. Maximizes return and limits risk on cash by minimizing bank balances and making investments.

4. Recommends to the President the establishment of disbursement policies. Approves cash disbursements and payment of corporate expenditures in accordance with disbursement policies.

5. Forecasts short-range and long-range cash requirements and obligations, as a basis for maintaining adequate funds.

6. Evaluates the financial and other practical aspects of new business opportunities and advises senior management as to the feasibility and practicality of such opportunities.

7. Participates with the President and other senior management in identifying, developing and maintaining financing sources adequate to support the operations and

CFS 005528

FEB-22-96 12:32 FROM:                    ID:4159040150                    PAGE

growth of the Company.

8. Reviews and approves all external and internal financial reporting, such as preparation of monthly and annual financial statements, budgets and variance reports, tax and other governmental and regulatory related reports.

9. Responsible for executive oversight of the annual audit by the Company's independent auditors.

10. Serves as a member of the Audit Committee. Coordinates the evaluation of the annual audit reports and resolution of disputes between the Internal Auditor and management.

WORKING RELATIONSHIPS:

Regular, daily contact with other members of senior management.

Occasional contact with department managers and supervisors.

Periodic contact with members of the outside audit firm.

Regular contact with existing and potential bankers/investors.

JOB REQUIREMENTS/QUALIFICATIONS:

1. A bachelors degree, preferably in Accounting, from an accredited college or university.

2. Professional designation as a Certified Public Accountant.

3. A minimum of 15 years of experience in public accounting and/or the financial services industry, or a combination thereof.

4. Strong analytical skills, including PC skills in computerized accounting systems, Lotus, Excel, or equivalent.

5. Strong interpersonal skills for communicating with high level executives with outside firms and for communicating with various levels within the Company.

CFS 005529

# EXHIBIT B

# EMPLOYMENT AGREEMENT

This Agreement is made effective as of September 5, 1996, by and between Commercial Financial Services, Inc., a corporation duly organized and existing under the laws of the State of Oklahoma, with a place of business at 2448 East 81st Street, Suite 5500, Tulsa, Oklahoma 74137-4248, hereinafter referred to as Employer, and Mike C. Temple, of 10520 South 69th East Avenue, Tulsa, Oklahoma 74133, hereinafter referred to as Employee.

## RECITALS

**WHEREAS**:

A.      Employer desires to enter into this contract to retain Employee because of Employee's on-the-job performance, business experience and expertise in financial and accounting matters and to provide Employee with protection in the event of a change of control of the Employer, as defined herein.

B.      Employee desires to continue to be employed by Employer in the capacity of Chief Financial Officer and to receive the protection provided herein in the event of a change of control of the Employer, or a termination except for cause, in exchange for Employee's agreement not to solicit the customers of Employer for a period of time as stated herein should Employee leave the employment of Employer for any reason.

For the reasons set forth above, and in consideration of the mutual covenants and promises of the parties set forth in this agreement, Employer and Employee agree as follows:

## SECTION ONE

## EMPLOYMENT

Employer will continue to employ Employee on the terms and conditions stated in this agreement to perform the services of Chief Financial Officer for Commercial Financial Services, Inc. and its affiliated entities and related services as requested by Employer, and Employee agrees to perform such services for Employer on the terms and conditions stated in this agreement.

CFS 034945

## SECTION TWO

## DUTIES

The duties of the Employee shall be those assigned to Employee by Employer as Chief Financial Officer, and as more specifically detailed in Schedule A attached hereto (Job Description), and related services as requested by Employer.

## SECTION THREE

## TERM OF EMPLOYMENT

The term of this agreement shall be two years commencing September 5, 1996 unless this agreement is renewed in some form. Continued employment of Employee by Employer after September 4, 1998, shall be at will and on the conditions agreed to by the parties prior to the effective date of this agreement.

## SECTION FOUR

## COMPENSATION

A.      Employer shall pay employee an annual base salary of One Hundred and Fifty Thousand Dollars ($150,000.00) ("Base Salary"), subject to withholding and payable twice a month on the 15th and last day of each month.

B.      Employee shall be eligible for annual salary increases in accordance with Employer's salary program which is discretionary to Employer.

## SECTION FIVE

## EMPLOYER'S OBLIGATION ON ITS
## TERMINATION OF EMPLOYEE'S EMPLOYMENT
## OR IN THE EVENT OF A CHANGE IN CONTROL

A.      If on or before September 4, 1998, Employer terminates this agreement for any reason other than cause (as defined in Section 6 below) and contingent upon compliance with the covenants herein, Employer shall provide to Employee, within thirty days of the termination event, a lump sum cash payment equal to the Employee's Base Salary for two years at Employee's then current Base Salary.

-2-

CFS 034946

B.    If on or before September 4, 1998, a Change in Control as hereinafter defined occurs and (i) Employee is thereafter terminated on or before September 4, 1998, or (ii) Employee voluntarily terminates his employment on or before September 4, 1998 because of, a change of his position or duties inconsistent with his position, duties, responsibilities and status with Employer immediately prior to such Change in Control, or the relocation of Employee's principal location of work to any location which is in excess of fifty miles from the location thereof immediately prior to a Change in Control, Employee shall be entitled to the cash payment described in Section 5A above.   A change in control shall mean for purposes of this provision that (i) Employer is merged or consolidated or reorganized into or with another corporation or other legal person and as a result of such merger, consolidation or reorganization less than 51% of the combined voting power of the then-outstanding securities of such corporation or person immediately after such transaction are held in the aggregate by the holders of voting securities of Employer immediately prior to such transaction; or (ii) Employer sells all or substantially all of its assets to another corporation or other legal person, with the exceptions that (a) the sale of all or substantially all of Employer's assets in a securitization transaction shall not be deemed to be a change in control, and (b) the sale by Employer of assets to an entity that, immediately prior to such sale, held 51% of the combined voting power of the then-outstanding voting securities in common with Employer shall not be deemed to be a change in control.

## SECTION SIX

## EMPLOYER'S OBLIGATION ON
## TERMINATION OF EMPLOYMENT BY EMPLOYEE

If, during the term of this agreement, Employee should (a) fail or refuse to perform the services contemplated by this agreement, or (b) should be unable to perform such services due to death or permanent disability, or (c) should engage in acts of behavior inappropriate to the position, including (i) an intentional act of fraud, embezzlement or theft in connection with his duties or in the course of his employment with Employer; (ii) intentional or grossly negligent action or inaction which results in wrongful damage to property of Employer; (iii) intentional or grossly negligent wrongful disclosure of trade secrets or confidential information of Employer; (iv) intentional violation of any law, rule or regulation (other than traffic violations or similar offenses) or final cease and desist order; (v) intentional breach of fiduciary duty involving personal profit; (vi) intentional or grossly negligent action or inaction which causes material economic harm to Employer; (vii) an act of moral turpitude or dishonesty; or (viii) direct disobedience of a valid and legal order or instruction from a superior (all of the above herein individually referred to as a "for cause" reason for termination), Employer's obligation to make the payment provided in Section Five of this agreement shall cease.  Sections Ten and Eleven hereof shall survive Employee's termination for cause.

-3-

CFS 034947

## SECTION SEVEN

### BENEFITS

In addition to the compensation Employee receives pursuant to Section Four, Employee is eligible for participation in the employee benefit programs established by Employer upon fulfillment of the eligibility requirements for each plan. Employer may, without notice, modify or discontinue any employee benefit plans which it maintains without obligation to Employee hereunder.

## SECTION EIGHT

### BEST EFFORTS

Employee agrees that he will at all times faithfully, industriously, and to the best of his ability, experience and talents, perform all of the duties that may be required of and from Employee pursuant to the express and implicit terms of this agreement, to the reasonable satisfaction of Employer.

## SECTION NINE

### TRADE SECRETS

Employee agrees not to disclose to any person or entity any information regarding the business of Employer (other than in the performance of his duties as Chief Financial Officer), including, but not limited to, its customers, products, prices or manner of operations, without first obtaining Employer's written consent.

To protect the interests of Employer, Employee agrees that during or after the termination of Employee's employment by Employer, all documents, records, computer programs and passwords, notebooks and similar repositories containing such information described in this section, including copies thereof, then in Employee's possession or work area, whether prepared by Employee or others, are the property of Employer and shall be returned to Employer upon Employer's request.

In the event Employee breaches this section, Employer shall be entitled, among other remedies, to injunctive relief prohibiting Employee from disclosing such information and attorneys' fees for enforcement of this section.

This section shall survive termination of this agreement.

-4-

CFS 034948

## SECTION TEN

## SOLICITATION AFTER TERMINATION

As consideration for Employer's agreement in Section Five hereof, during the term of Employee's employment by Employer and for two years thereafter (regardless of the reason for Employee's termination from employment by Employer), Employee agrees that Employee will not, without the prior written consent of Employer, directly or indirectly, whether as an employee, officer, director, independent contractor, consultant, stockholder, partner or otherwise, on behalf of himself or on behalf of any other person, firm, corporation or other entity, call on any of Employer's (or its affiliates' or subsidiaries') customers located in the United States for the purpose of soliciting and/or providing to any of such customers any non-performing consumer loan servicing or for the purpose of purchasing any non-performing consumer loans from such customers, nor will he in any way, directly or indirectly, for himself or on behalf of any other person, firm, corporation or other entity solicit, divert or take away any customer of Employer, its affiliates or subsidiaries which sells non-performing consumer loans to Employer or any customer for which Employer services non-performing consumer loans.

Employee further agrees that in consideration for the protection provided in Section Five of this agreement, during the term of Employee's employment and for two years thereafter, Employee will not induce or attempt to induce any person who is an employee of Employer to leave the employ of Employer and engage in the business of purchasing, collecting or servicing non-performing consumer loans in the United States.

The parties agree and acknowledge that the time, scope and geographic area and other provisions of this agreement have been specifically negotiated by the parties, and Employee specifically hereby agrees that such time, scope and geographic areas, and other provisions are reasonable under these circumstances. Employee further agrees that if, despite the express agreement of the parties to this agreement, a court should hold any portion of this agreement unenforceable for any reason, the maximum restrictions of time, scope and geographic area reasonable under the circumstances, as determined by the court, will be substituted for any restrictions held unenforceable.

Employee agrees that violating this section of this agreement at any time, including during litigation, will produce severe damage and injury to Employer not easily remediable in a court of law. Thus, in the event of the breach of, or threatened breach by Employee of this section of this agreement, the Employer shall be entitled to seek injunctive relief, both preliminary and permanent, enjoining and restraining such breach or threatened breach and particularly to maintain the status quo pending any litigation. Such remedies shall be in addition to all other remedies available to Employer in law or equity, including but not limited to Employer's right to recover from Employee any and all damages that may be sustained as a result of Employee's breach.

This section shall survive termination of this agreement.

CFS 034949

## SECTION ELEVEN

## NOTICE

Any notice required pursuant to this agreement shall be in writing and sent by registered or certified mail or personal delivery to Employer's principal office and Employee's last-known address.

## SECTION TWELVE

## GOVERNING LAW

This agreement shall be governed by the laws of the jurisdiction which approves of and enforces agreements of this nature and terms without reference to its conflict of laws provisions, and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with such laws.

## SECTION THIRTEEN

## MODIFICATION

This agreement represents the entire agreement between the Employer and Employee. No modification of this agreement is valid unless it is in writing and signed by the parties.

## SECTION FOURTEEN

## ASSIGNABILITY

This agreement is not assignable.

## SECTION FIFTEEN

## NO WAIVER

The failure of either party to this agreement to insist upon the performance of any of the terms and conditions of this agreement, or the waiver of any breach of any of the terms and conditions of this agreement, shall not be construed as thereafter waiving any such terms and conditions, but the same shall continue and remain in full force and effect as if no such forbearance or waiver had occurred.

-6-

CFS 034950

## SECTION SIXTEEN

## SEVERABILITY

Each provision of this agreement is separable from the whole. If any portion of this agreement is determined to be invalid, that invalidity shall not impair the remaining provisions of this agreement.

IN WITNESS WHEREOF, the parties have executed this agreement the day and year first above written.

**EMPLOYEE ACKNOWLEDGMENT:**                **EMPLOYER ACKNOWLEDGMENT:**

**MIKE C. TEMPLE**                          **COMMERCIAL FINANCIAL SERVICES, INC.**

DATE: _9/5/96_

NAME: _WILLIAM R. BARTMANN_

TITLE: _PRESIDENT_

DATE: _9/5/96_

-7-

CFS 03495

**COMMERCIAL FINANCIAL SERVICES, INC.**

**JOB DESCRIPTION**

**JOB TITLE:**    Chief Financial Officer

**LABOR GRADE:**  Not Applicable

**DEPARTMENT:**   Finance and Accounting

==================================================================

**BASIC FUNCTIONS:**

The Chief Financial Officer has broad responsibility for (1) evaluating, managing, controlling and reporting the Company's operating results, (2) maintaining and developing the Company's financing sources, (3) safeguarding the Company's assets and maintaining an adequate internal structure, and (4) supervising the accounting department and related functions.

**DIMENSIONS:**

Operating Budget: $_____    #Employees (Direct)    _____
Annual Payroll:   $_____    #Employees (Indirect)  _____
Other: _____      #Employees (Total)     _____

**PRINCIPAL DUTIES AND RESPONSIBILITIES:**

1. Counsels senior management on fiscal control and profitability.

2. Evaluates the financial and other practical aspects of new business opportunities and advises senior management as to the feasibility and practicality of such opportunities.

3. Participates with the President and other senior management in identifying, developing and maintaining alternative financing sources.

4. Supervises the development and maintainance of an adequate internal control structure for the safeguarding of the Company's assets.

5. Establishes all accounting policies and supervises the finance and accounting department.

*March 16, 1993*
*1*

CFS 034952

6. Supervises all external and internal financial reporting, such as the preparation of monthly and annual financial statements, budgets and variance reports, tax and other governmental and regulatory related reports.

7. Responsible for coordinating the annual audit by the Company's independent auditors.

8. Exercises the usual authority of a department head concerning staffing, performance appraisals, promotions, salary recommendations and terminations.

**WORKING RELATIONSHIPS:**

The Chief Financial Officer is required to work with and respond primarily to senior management and external financial sources and must be capable of working with all departments within the Company.

**JOB REQUIREMENTS / QUALIFICATIONS:**

The Chief Financial Officer must have the following qualifications:

1. A Bachelors degree from an accredited college or university.

2. Professional designation as a Certified Public Accountant.

3. A minimum 15 years of experience in public accounting and/or the financial services industry.

4. Outstanding analytical skills.

5. Interpersonal skills to be able to work with any type of person at any level within or outside of the Company.

6. Must have very strong PC skills in computerized accounting systems and Lotus, Excel or equivalent.

CFS 034953

## PHYSICAL REQUIREMENTS:

E = Essential
M = Marginal

Job Function:

| | | |
|---|---|---|
| __E__ Writing | _____ Bending | _____ Standing |
| __E__ Reading | __E__ Typing | __E__ Hearing |
| __E__ Proofreading | __M__ Data Input | _____ Walking |
| __E__ Traveling | __E__ Talking | _____ Driving |
| __E__ Sitting | | |

<u>Lifting</u>

_____ Up to 10 lbs.

__M__ 11 - 20 lbs.

_____ Over 20 lbs.

<u>Carrying</u>

_____ Up to 10 lbs.

__M__ 11 - 20 lbs.

_____ Over 20 lbs.

Equipment:

| | | |
|---|---|---|
| _____ Typewriter | __E__ Telephone | _____ CRT |
| __E__ Word Processer | __E__ Calculator | __E__ Computer |
| __E__ Adding Machine | _____ Automobile | _____ Other |

All items indicated with "E" above are used daily and
extensively in the performance of this job.

CFS 034954

# EXHIBIT C

# TERMINATION OF EMPLOYMENT AGREEMENT

This Agreement is made effective as of July 10, 1998, by and between Commercial Financial Services, Inc., a corporation duly organized and existing under the laws of the State of Oklahoma, with a place of business at 2448 East 81st Street, Suite 5500, Tulsa, Oklahoma 74137-4248, hereinafter referred to as Employer, and Mike C. Temple, of 10520 South 69th East Avenue, Tulsa, Oklahoma 74133, hereinafter referred to as Employee.

## RECITALS

WHEREAS:

A.     Employer and Employee have determined that it is in the interests of both parties to terminate their employer/employee relationship effective July 17, 1998.

B.     In consideration for the amounts to be paid to Employee hereunder, Employee agrees not to solicit the customers or employees of Employer or compete in any manner in Employer's business for a period of two years from the date hereof.

For the reasons set forth above, and in consideration of the mutual covenants and promises of the parties set forth in this agreement, Employer and Employee agree as follows:

## SECTION ONE

## TERMINATION OF EMPLOYMENT AND EMPLOYMENT AGREEMENT

Except as restated herein, the obligations of the parties pursuant to that certain Employment Agreement dated September 5, 1996 shall terminate effective July 17, 1998 and Employee shall cease to be an employee of Employer as of that date. Further, Employee's duties as Chief Financial Officer of Employer shall cease effective July 10, 1998.

## SECTION TWO

## CONSIDERATION

A.     In consideration of the terms stated in Sections 3 and 4 below, Employer shall pay Employee a lump sum payment of $3.25 Million (Three Million Two Hundred and Fifty Thousand Dollars) subject to withholding and payable on Friday, July 17, 1998.

CFS 005779

B.    In addition to the consideration stated in Subsection A hereof, in further consideration of the terms stated in Sections 3 and 4 below, Employer agrees to indemnify Employee in the event he is or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, other than an action by or in the right of the Employer, by reason of the fact that he was an employee of the Employer, against any expenses, including reasonable attorneys' fees, judgments, fines and amounts paid in settlement actually and reasonably incurred by him in connection with such action, suit or proceeding if he acted in good faith and in a manner he reasonably believed to be in and not opposed to the best interest of the Company, and, with respect to any criminal action or proceeding, had no reasonable cause to believe his conduct was unlawful. The termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that the Employee did not act in good faith and in a manner which he reasonably believed to be in or not opposed to the best interest of the Company, and, with respect to any criminal action or proceeding, had reasonable cause to believe that his conduct was unlawful.

Additionally, the Company shall indemnify Employee in the event he is or is threatened to be made a party to any threatened, pending or completed action or suit by or in the right of the Company to procure a judgment in its favor by reason of the fact that he was an Employee of the Company against expenses, including reasonable attorneys' fees actually and reasonably incurred by him in connection with the defense or settlement of such action or suit if he in good faith and in a manner he reasonably believed to be in or not opposed to the best interest of the Company and except that no indemnification shall be made in respect of any claim, issue or matter as to which Employee shall have been adjudged to be liable to the Company unless and only to the extent that the court in which such action or suit was brought shall determine upon application that, despite the adjudication of liability but in view of all the circumstances of the case, such person is fairly and reasonably entitled to indemnity for such expenses which the court shall deem proper.

Expenses incurred by Employee in defending a civil or criminal action, suit or proceeding may be paid by the Company in advance of the final disposition of such action, suit or proceeding upon receipt of an undertaking by or on behalf of Employee to repay such amount if it shall be determined that he is not entitled to be indemnified by the Company as authorized by the provisions of this Section Two.

-2-

CFS 005780

C.   As additional consideration, Employer agrees to pay Employee's COBRA payment for a period of twelve months from July 17, 1998 to maintain Employee's health, vision and dental insurance coverage under Employer's medical plan.  Thereafter, Employee will be responsible for COBRA payments if he elects to make them.

## SECTION THREE

## TRADE SECRETS

Employee agrees not to disclose to any person or entity any information regarding the business of Employer, including, but not limited to, its customers, products, prices or manner of operations, without first obtaining Employer's written consent.

To protect the interests of Employer, Employee agrees that all documents, records, computer programs and passwords, notebooks and similar repositories containing such information described in this section, including copies thereof, in Employee's possession or work area, whether prepared by Employee or others, are the property of Employer and shall be returned to Employer on or before Friday, July 17, 1998.

In the event Employee breaches this section, Employer shall be entitled, among other remedies, to injunctive relief prohibiting Employee from disclosing such information and attorneys' fees for enforcement of this section.

This section shall survive termination of this agreement.

## SECTION FOUR

## SOLICITATION AFTER TERMINATION

As consideration for Employer's agreement in Section Two hereof, for a period of two years from the date hereof, Employee agrees that (i) Employee will not, without the prior written consent of Employer, directly or indirectly, whether as an employee, officer, director, independent contractor, consultant, stockholder, partner or otherwise, on behalf of himself or on behalf of any other person, firm, corporation or other entity, call on any of Employer's (or its affiliates' or subsidiaries') customers located in the United States or abroad for the purpose of soliciting and/or providing to any of such customers any non-performing consumer loan servicing or collection services or for the purpose of purchasing any non-performing consumer loans from such customers or for the purpose of securitizing any non-performing consumer loans for such customers, (ii) Employee will not in any way, directly or indirectly, for himself or on behalf of any other person, firm, corporation or other entity solicit, divert or take away any customer of

-3-

CFS 005781

Employer, its affiliates or subsidiaries which sells non-performing consumer loans to Employer or any customer for which Employer services non-performing consumer loans, and (iii) Employee will not in any other manner compete with Employer in the business of purchasing, servicing, collecting or securitizing non-performing consumer loans.

Employee further agrees that in consideration for the protection provided in Section Two of this agreement, for a period of two years from the date hereof, Employee will not induce or attempt to induce any person who is an employee of Employer to leave the employ of Employer and engage in the business of purchasing, collecting, servicing or securitizing non-performing consumer loans in the United States or abroad.

The parties agree and acknowledge that the time, scope and geographic area and other provisions of this agreement have been specifically negotiated by the parties, and Employee specifically hereby agrees that such time, scope and geographic areas, and other provisions are reasonable under these circumstances. Employee further agrees that if, despite the express agreement of the parties to this agreement, a court should hold any portion of this agreement unenforceable for any reason, the maximum restrictions of time, scope and geographic area reasonable under the circumstances, as determined by the court, will be substituted for any restrictions held unenforceable.

Employee agrees that violating this section of this agreement at any time, including during litigation, will produce severe damage and injury to Employer not easily remediable in a court of law. Thus, in the event of the breach of, or threatened breach by Employee of this section of this agreement, the Employer shall be entitled to seek injunctive relief, both preliminary and permanent, enjoining and restraining such breach or threatened breach and particularly to maintain the status quo pending any litigation. Such remedies shall be in addition to all other remedies available to Employer in law or equity, including but not limited to Employer's right to recover from Employee any and all damages that may be sustained as a result of Employee's breach.

This section shall survive termination of this agreement.

## SECTION FIVE

### NOTICE

Any notice required pursuant to this agreement shall be in writing and sent by registered or certified mail or personal delivery to Employer's principal office and Employee's address stated in the first paragraph of this Agreement.

-4-

CFS 005782

## SECTION SIX

## GOVERNING LAW

This agreement shall be governed by the laws of the jurisdiction which approves of and enforces agreements of this nature and terms without reference to its conflict of laws provisions, and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with such laws.

## SECTION SEVEN

## MODIFICATION

This agreement represents the entire agreement between the Employer and Employee.  No modification of this agreement is valid unless it is in writing and signed by the parties.

## SECTION EIGHT

## ASSIGNABILITY

This agreement is not assignable.

## SECTION NINE

## NO WAIVER

The failure of either party to this agreement to insist upon the performance of any of the terms and conditions of this agreement, or the waiver of any breach of any of the terms and conditions of this agreement, shall not be construed as thereafter waiving any such terms and conditions, but the same shall continue and remain in full force and effect as if no such forbearance or waiver had occurred.

## SECTION TEN

## SEVERABILITY

CFS 005783

Each provision of this agreement is separable from the whole.  If any portion of this agreement is determined to be invalid, that invalidity shall not impair the remaining provisions of this agreement.

IN WITNESS WHEREOF, the parties have executed this agreement the day and year first above written.


**EMPLOYEE ACKNOWLEDGMENT:**          **EMPLOYER ACKNOWLEDGMENT:**


MIKE C. TEMPLE                       COMMERCIAL FINANCIAL
                                     SERVICES, INC.



DATE:  7/13/98                       NAME:

                                     TITLE: PRESIDENT

                                     DATE: 7/13/98


-6-

CFS 005784